UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**LORNE JOSEPH DOTY, and
SHERRY LOU DOTY,**

Debtors.

Case No. **08-60173-13**

*MEMORANDUM  OF  DECISION*

At Butte in said District this 28th day of August, 2008.

In this Chapter 13 case, after due notice, a hearing was held at Missoula on August 5, 2008, on the Debtors' objection (Docket No. 25) to Proof of Claim No. 8-2 filed by Apex Funding Group, Inc. ("Apex"), and on Debtor's objection (Docket No. 37) to Apex's Application to approve Fees of Over-Secured Creditor ("Application") (Docket No. 35).  Apex filed a response to Debtors' objection to its Proof of Claim and was represented at the hearing by attorney Quentin M. Rhoades ("Rhoades") of Missoula.  Debtor was represented by attorney Jon R. Binney ("Binney") of Missoula.  No testimony or exhibits were offered.  The Court granted Debtors' request to take judicial notice of Apex's Application and Proof of Claim No. 8-2.  Rhoades conceded at the hearing that Apex's prepetition fees are limited by MONT. CODE ANN.

1

("MCA") § 71-1-320 to the lesser of one percent (1%) of the obligation or $1,000, but argued that Apex's claim for post-petition fees remains a legal question under bankruptcy law which preempts state law. After hearing statements from counsel the Court took both matters under advisement. After review of the record and applicable law, the Court sustains the Debtors' objections and allows Apex attorney's fees in accordance with MCA § 71-1-320 and its published decision, *In re Ransom*, 361 B.R. 895, 901-02 (Bankr. D. Mont. 2007).

The allowance of Apex's fees in its claim and Application is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

The parties agree that no disputed issues of fact exist. Debtors Lorne Joseph Doty and Sherry L. B. Doty entered into a Montana Trust Indenture ("trust indenture") and Montana Trust Indenture Note ("Note") with Apex dated February 9, 2007, in the amount of $45,600.00, and granted their residence[1] to a trustee with Apex as beneficiary to secure the Note. The trust indenture provides at paragraph 21 in pertinent part: "This Trust Indenture is made within the State of Montana pursuant to the Small Tract Financing Act of Montana ...."

The Trust Indenture and Note are attached to Apex's Claim No. 8-2 and include provisions for attorney fees. The trust indenture provides at paragraph 5 that the Dotys agree:

> [e]xcept as otherwise expressly provided herein, to pay all costs, fees and expenses of this trust, including cost of search and evidence of title, advertising and recording expense, documentary taxes and Trustee's and attorney's fees as

---

[1] The real property granted by the Dotys in the trust indenture is described as: Lot 3, Block 2, White's Orchard Homes, Missoula County, Montana, as disclosed in Book 152 of Micro at page 2277, records of Missoula County, Montana.

allowed by law and by the underlying promissory note.

Paragraph 11 of the trust indenture authorizes Apex to take possession of the property security upon any default and "sue or otherwise collect said rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney fees, cost and expenses upon any indebtedness secured hereby ...."

Paragraphs 17 and 18 of the trust indenture provide:

> 17. Upon the occurrence of any default hereunder, Beneficiary [Apex] shall have the option to declare all sums secured hereby immediately due and payable and foreclose this Trust Indenture in the manner provided by law either through judicial proceedings or by notice and private sale, and Beneficiary shall be entitled to recover in such proceedings all costs and expenses incident thereto, including reasonable attorney's fee in such amount as shall be fixed by Court.
>
> 18. Except as may be otherwise provided herein, Grantor agrees to pay to Beneficiary or Trustee the cost and expenses, including attorney's fee as allowed by the promissory note and statute.

The Note includes provisions for attorney fees in the event of default, including a provision on page 2 which provides for Apex to receive attorneys' fees and costs in a bankruptcy, whether or not Apex prevails:

> In the event of default by Makers, and subject to restrictions of the Small Tract Financing Act, the holder of this note shall be entitled to recover from the Makers, in addition to costs, expenses and disbursements, the holder's reasonable attorney fees. Attorneys' fees shall include any attorneys' services rendered prior to the institution of litigation and include all matters pertaining to enforcement, rescinding, interpretation or protection of a party's interest prior to and/or pertaining to litigation. The recovery of attorneys' fees shall include a reasonable estimate of the attorneys' fees to be incurred by the prevailing party following any initial decision or judgment entered and estimated to be incurred to enforce the decision or judgment.
>
> In addition, should Maker become a debtor in bankruptcy or be subject to an involuntary petition in bankruptcy, the debtor party shall reimburse the creditor

3

party for any and all reasonable attorneys' fees, cost, expenses and disbursements incurred in protecting or attempting to protect the creditor party's interest and rights under the contract without regard to whether there is a prevailing party and without regard to which party in fact is deemed to have prevailed.

Costs, expenses and disbursements shall include not only costs allowed under Montana statutory and case law; but also, costs, expenses and disbursements shall include those costs, expenses and disbursements reasonably necessary for preparation, negotiations, settlement meetings and litigation. For example such costs, expenses and disbursements shall include, without limitation, such items as photocopy cost, long distance telephone costs, deposition transcript fees, mileage for travel, exhibit reproduction costs and expert witness and consultation fees.

Dotys defaulted under the terms of the trust indenture and Note. On February 28, 2008, they filed their Chapter 13 petition, with their Schedule D listing Apex as a creditor with a claim in the amount of $46,500.00 secured by real property comprising their homestead which they valued at $498,000[2]. Apex is oversecured.

Debtors filed their Chapter 13 Plan on March 13, 2008, listing Apex as having an unimpaired claim based on a second mortgage on their residence, and an arrearage to be cured through the Plan in the sum of $7,614.05. The Plan provided for a sale of their residence to pay the claims secured by the residence, with arrearages paid through the Trustee. After the Chapter 13 Trustee and Apex filed objections to confirmation, Debtors amended their Plan, with the most recent Third Amended Plan continuing to propose the sale of their residence to pay secured creditors and arrearages with the sale proceeds, and paying Apex an arrearage described as

---

[2]Schedule D lists other claims secured by the homestead held by Countrywide Home Loans ("Countrywide") in the amount of $278,108.20, and the US Small Business Admin. In the amount of $105,000. All the secured claims are marked "unliquidated."

4

"$6,318.89 plus any prepetition costs and fees allowed by the Court[3].

Apex filed Proof of Claim No. 8 on April 2, 2008, asserting a claim in the amount of $57,141.25 secured by Debtors' residence, which it listed at a value of $450,000, and an arrearage stated in the amount of $12,141.25. The Chapter 13 Trustee filed an objection to Apex's claim on April 7, 2008, for lack of attachments and set the matter for hearing on May 15, 2008. In response, Apex filed an amended Claim No. 8-2 on April 10, 2008, reducing its claim to $56,705.20, and reducing the claimed arrearage on the petition date to $11,105.20. The Trustee withdrew his objection to Apex's claim.

Apex's Claim No. 8-2 includes attachments and an affidavit of attorney William R. Babington, Jr., itemizing the attorney and paraprofessional fees in the total amount of $4,005.80, and itemizes Apex's claim as follows:

| | |
|---|---|
| Principal amount of Loan | $45,600.00 |
| Payment arrearage and interest | $ 5,768.89 |
| Late Payment Fees | $    550.00 |
| Attorney Fees | $ 4,005.80 |
| Costs | $    780.56 |
| **Total** | **$56,705.20** |

The Debtors filed an objection to Apex's Claim No. 8-2 on May 1, 2008, on the grounds the fees and costs requested do not satisfy 11 U.S.C. § 506(b) because they exceed the statutory

---

[3]The Chapter 13 Trustee filed on August 11, 2008, a consent to confirmation of the Third Amended Plan, which is set for hearing on September 11, 2008. Apex has not filed a response to the Third Amended Plan. The arrearage amount in the Third Amended Plan is not the same as reflected on the Amended Proof of Claim or as may be required by this memorandum, so an additional amended plan may be necessary to correct the arrearage amount being paid through the plan, even though the Chapter 13 Trustee consented to the Third Amended Plan.

maximum set by MCA § 71-1-320[4].

Apex filed a response citing § 506(b) and the provisions of the Note that entitle it to recover all its attorney fees incurred in protecting its interest in the event the Debtors sought relief under the Bankruptcy Code. Apex acknowledges that this Court's decisions in *In re Ransom*, 361 B.R. at 901-02 and *In re Llewellyn,* 2008 WL 1820906 (Bankr. D. Mont. 2007) would limit Apex's fees to 1% of the principal and interest owed, which it calculates as $513.68 for prepetition fees. Apex contends, however, that the Debtors waived the limitation of MCA § 71-1-320 and sought bankruptcy relief, and that Debtors have not challenged the reasonableness of its requested fees under *In re Kord Enterprises II*, 139 F.3d 684, 687, 689 (9th Cir. 1998), and therefore Debtors' objection should be overruled or, in the alternative, Apex should be awarded prepetition fees in the amount of $513.68 and all of its reasonable post-petition fees and costs under § 506(b).

On May 20, 2008, Apex filed its Application for post-petition fees and costs under § 506(b) and F.R.B.P. 2016(a), seeking post-petition fees in the amount of $3,837.95[5]. Attached to

---

[4]MCA § 71-1-320 provides:

Trustees' fees and attorneys' fees. Reasonable trustees' fees and attorneys fees to be charged to the grantor in the event of foreclosure by advertisement and sale shall not exceed, in the aggregate, 5% of the amount due on the obligation, both principal and interest, at the time of the trustee's sale. If prior to the trustee's sale the obligation and the trust indenture shall be reinstated in accordance with the provisions of 71-1-312, the reasonable trustees' fees and attorneys' fees to be charged to the grantor shall not exceed the lesser of $1,000 or 1% of the amount due on the obligation, both principal and interest, at the time of default. In no event shall trustees' fees and attorneys' fees be charged to a grantor on account of any services rendered prior to the commencement of foreclosure.

[5]The only amount requested in the Application is $3,837.95 in fees. No costs are requested even though they are itemized in the attached billing statements. The Application concludes: "Creditor hereby respectfully request the Court approve its employment of Sullivan, Tabaracci & Rhoades, P.C."

the Application is Rhoades' sworn explanation of Apex's post-petition attorney fees incurred from February 28, 2008, through April 24, 2008. Rhoades' "Explanation of Services" on page 3 of his explanation states: "The activity consisted of analyzing documents and preparing foreclosure documents."

Time records are also attached showing services, initials of professional, time increment, and amount of fees beginning 2/28/08 through 5/5/08, and includes costs for copies, postage, and filing fees totaling $159.48. With respect to the first proof of claim, an entry appears dated 3/24/08 indicating that "MF"[6] billed 1.5 hours to prepare Proof of Claim No. 8. The Trustee objected to the first proof of claim because it consisted of a single page with no documents attached supporting the claim. Beginning 4/7/08 several entries are set forth preparing Apex's amended Claim 8-2.

Debtor filed an objection to Apex's Application on May 30, 2008, contending that the fees requested are duplicative and not reasonable and necessary.

## DISCUSSION

Apex was required to file its Application for fees under § 506(b) in accordance with the standards set forth in 11 U.S.C. § 330(a). Mont. LBR 2016(d). This Court has an independent obligation to review each application for compensation to ensure that applicants provide an adequate summary of work performed and costs incurred. *In re WRB-West Associates*, 9 Mont. B.R. 17, 18-20 (Bankr. D. Mont. 1990). The Court is obligated to review each request for fees and costs to determine whether the applicant provided:

1. a description of the services provided, setting forth, at a minimum, the parties involved

---

[6]"MF" is Michelle M. Fontaine, and attorney whose hourly rate is $70.00.

7

>   and the nature and purpose of each task;
>
>   2. the date each service was provided;
>
>   3. the amount of time spent performing each task; and
>
>   4. the amount of fees requested for performing each task.

Apex's Application includes billing statements which provide detail of the fees requested to enable the Court to undertake its investigation.

Apex applies for attorney's fees and costs on the basis that it is an oversecured creditor under § 506(b).  The Ninth Circuit construed § 506(b) in *In re Kord Enterprises II*, 139 F.3d 684, 687, 689 (9th Cir. 1998):

>   Section 506(b) provides:
>
>   >   To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
>
>   § 506(b).  Both parties agree that the Bank was an oversecured creditor and thus came within the purview of § 506(b).  The language of that section is clear.  The creditor is entitled to attorneys' fees if (1) the claim is an allowed secured claim; (2) the creditor is oversecured;  (3) the fees are reasonable;  and (4) the fees are provided for under the agreement.  *See, e.g., Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.)*, 151 B.R. 931, 935 (9th Cir. BAP 1993); *Meritor Mortgage Corp., West v. Salazar (In re Salazar)*, 82 B.R. 538, 540 (9th Cir. BAP 1987).

Since the *Kord* decision, § 506(b), upon which Apex's Application for attorney fees is based, was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA") to add a reference to "State statute":

>   To the extent that an allowed secured claim is secured by property the value of which after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest

>on such claim, and any reasonable fees, costs, or charges provided for under the agreement *or State statute* under which such claim arose.

§ 506(b) (emphasis added).

That amendment undermines one of Apex's contentions, i.e., that the terms of the Note and § 506(b) preempt the state law limitation of MCA § 71-1-320. On the contrary, § 506(b) and 11 U.S.C. § 1322(e) (amount necessary to cure default) both specifically refer to "State statute" and "applicable nonbankruptcy law," respectively, in their text. These bankruptcy statutes apply state law as well as the underlying agreement, they do not preempt the state statutes.[7]

This Court has awarded reasonable attorney's fees under § 506(b) to oversecured creditors who found it necessary to engage counsel to defend their secured status. *In re Copper King Inn*, 10 Mont. B.R. 146, 148 (Bankr. D. Mont. 1991). In the instant case Apex filed a Proof of Claim, which it had to amend when the Chapter 13 Trustee objected. Apex's original Proof of Claim 8 failed to include any of the required documentation or itemization of the claim, and the Court is hard-pressed to see how an hour and a half of attorney time could be spent preparing that single page claim. When Apex filed its amended Claim No. 8-2 the Debtors filed an objection, but their objection did not contest Apex's secured status. Instead they objected to Apex's fees. Nowhere in Debtors' Schedules or objections was any challenge made to Apex's secured status.

A creditor has the burden of proof to establish the reasonable of fees pursuant to § 506(b). *Ransom*, 361 B.R. at 898; *Kord*, 139 F.3d at 687, 689. When a debtor overcomes the *prima facie* effect given a claim by F.R.B.P. 3001(f), the burden shifts to the claimant to prove the validity of

---

[7] The conclusion in footnote 1 of *In re Michnal*, 19 Mont. B.R. 410, 411 (Bankr. D. Mont. 2001), that § 506 preempted State law is overruled given the BAPCPA amendment to § 506 that now includes the language "State statute."

9

its claim by a preponderance of the evidence. *In re Pillard*, 20 Mont. B.R. 445, 448 (Bankr. D. Mont. 2003). This Court finds that Debtors have produced sufficient evidence to cause the burden to shift to Apex to prove the validity and amount of its claim for attorney fees and costs. *Id.*; *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000).

No dispute exists that Apex is oversecured. What constitutes "reasonable attorney's fees" is discussed in *In re Hungerford,* 19 Mont. B.R. 103, 136-138 (Bankr. D. Mont. 2001), *quoting In re Huhn*, 145 B.R. 872, 876 (Bankr. W.D. Mich. 1992):

> Pursuant to Bankruptcy Code § 506(b), a secured creditor is allowed only "reasonable attorney fees". In making a fee determination, the court must consider not only the fee agreement, but the overall fairness and reasonableness of the fee under all of the circumstances. *In re K-Fab, Inc.*, 118 B.R. 240, 242 (Bkrtcy.M.D.Pa.1990) (*citing Lund v. Affleck*, 587 F.2d 75 (1st Cir.1978)).
>
> "Reasonable" fees are those necessary to the collection and protection of a creditor's claim. *In re PCH Assoc.*, 122 B.R. at 204; *In re Kroh Bros.*, 105 B.R. at 521. They include fees for those actions which a similarly situated creditor might have taken. *In re Riker*, 122 B.R. at 970.
>
> In *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 169 (Bkrtcy.S.D.N.Y.1985), the court held that "it is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved." (quoted with approval in *In re Rubenstein*, 105 B.R. at 203; *In re Kroh Bros.*, 105 B.R. at 521).
>
> An oversecured creditor is not entitled to compensation for its attorneys' fees for every action it takes by claiming that its rights have been affected. *In re Kroh Bros.*, 105 B.R. at 521. "[W]here services are not reasonably necessary or where action is taken because of an attorney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)." *In re Riker*, 122 B.R. at 973 (*quoting In re Wonder Corp. of America*, 72 B.R. 580, 591 (Bkrtcy.D.Conn.1987), *aff'd*, 82 B.R. 186 (D. Conn. 1988)).

*See also In re Digital Products Corp.*, 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997).

Debtors object to Apex's attorney fees in Claim No. 8-2 based on the state law limitation

10

of MCA § 71-1-320. Their Plans have each proposed to cure Apex's arrearage by making payments through the Trustee, including prepetition fees and costs allowed by the Court.

> This Court wrote in *Ransom*:
>
> Pursuant to MCA §§ 71-1-312 and 71-1-320, when a debtor cures a note obligation secured by a trust indenture through the provisions of 11 U.S.C. § 1322(b)(3) and (e), the creditor is only allowed to recover reasonable fees in an amount not to "exceed the lesser of $1,000 or 1 % of the amount due on the obligation, both principal and interest, at the time of default. In no event shall . . . attorneys' fees be charged to a grantor on account of any services rendered prior to the commencement of foreclosure." MCA § 71-1-320. Consequently, the reasonable fees, allowed by MCA § 71-1-320 when reinstatement occurs, as it does when a cure of the default is accomplished under MCA § 71-1-312 and 11 U.S.C. § 1322(b)(3) and (e) would be limited to the lesser of 1 % or $1,000 of the amount of principal and interest due on the obligation.
>
> * * * *
>
> The Court further notes pursuant to MCA § 71-1-320 a creditor in a nonjudicial foreclosure may not charge the debtor attorneys' fees that exceed in the aggregate with the trustee's fee an amount in excess of 5 % of the amount due on the obligation at the time of the trustee's sale, including both principal and interest.

*Ransom*, 361 B.R. at 901-02.

The Court in *Ransom* "does adopt the statutory limitations imposed by MCA § 71-1-320 for creditor's attorneys who are requesting fees in a proof of claim involving a foreclosure under the Small Tract Financing Act of Montana." *Ransom*, 361 B.R. at 902. The Court disallowed the stated fees for failure to submit a fee application, and because "the stated amounts egregiously exceed the fees allowed by statutory limitation." *Id.* at 903. *Ransom* remains good law in this District.

*Llewellyn* also construed § 71-1-320 and found that costs were not included in the

11

limitations of the statute, and allowed costs for two nonjudicial foreclosures. 2008 WL 1820906, * 4. Apex's Application does not specifically request costs, but does note that the agreement provides for post-petition costs.

Apex contends that the provisions of the Note, which allow it attorney fees and costs, even if it is not the "prevailing" party, preempt MCA § 71-1-320. Apex cites no case authority supporting its contention that a contractual provision can override the statutory limitations of the Small Tract Financing Act. MCA § 71-1-305 clarifies in pertinent part that a trust indenture is subject to the limitation of the Small Tract Financing Act: "A trust indenture is deemed to be a mortgage on real property and is subject to all laws relating to mortgages on real property except to the extent that such laws are inconsistent with the provision of this part, *in which the provisions of this part shall control*." (Emphasis added); *see First Fed. Sav. & Loan Ass'n of Missoula v. Anderson* (1989), 238 Mont. 296, 300, 777 P.2d 1281, 1283.

Both the Note and the trust indenture recognize and state that Apex's remedies are subject to the restrictions of Montana's Small Tract Financing Act. Therefore, the provisions of the Note awarding Apex attorney fees and costs even if it is not the prevailing party are inconsistent with other terms in the Note and trust indenture, MCA § 71-1-305 and MCA § 71-1-320, which control. They also conflict with MCA § 28-3-704 which provides that in an action on a contract or obligation where one party has an express right to recover attorney fees, then "all parties to the contract or obligation shall be deemed to have the same right to recover attorney fees and the prevailing party in such action, whether by virtue of the express contractual right or by virtue of this section, shall be entitled to recover his reasonable attorney fees from the losing party or parties." *Valeo v. Tabish*, 1999 MT 146, ¶ 23, 295 Mont. 34, 40, ¶ 23, 983 P.2d 334, 338, ¶ 23.

Apex's contention that the provision of the Note awarding it fees and costs whether or not it prevails is inconsistent with Montana law, and as such that provision will be not be given effect.

The stated principal in Apex's Claim is $45,600. Apex's Claim then states that the payment arrearage and interest amounts to $5,768.89. Apex does not in its Claim state the amount of the accrued interest from the date of Debtors' last prepetition payment, which brought interest current, until the Debtors' bankruptcy filing and does not provide any calculated per diem interest charge. Apex's failure to itemize principal, accrued interest, and per diem interest charges is in violation of Mont. LBR 3001-2 and 3001-3, and prevents this Court from determining the amount of principal and interest that must be used in determining the reasonable fees that are allowable under MCA § 71-1-320. This section requires that the reasonable fee calculation be based on the amount of principal and interest owing at the time of default.

This Court observed in *Michnal*, 19 Mont. B.R. at 412-413:

> The proof of claim does not set forth a per diem interest amount determined on the principal amount from the date when the payments on this obligation were last current and it does not note the date on which accruing interest on this obligation was last paid current. The nondisclosure of the per diem, and of the amount of accruing interest to the date of the petition date fails to comply with Mont. LBR 3001-2. Further, Homeside adds 19 delinquent monthly payments to the principal through the arrearage from the date of the last payment on April 1, 1999, to the Debtors's petition date of October 30, 2000. The addition of such delinquent monthly payments ($15,612.68) and other prepetition charges ($3,357.59) to the principal balance ($82,787.43), for a total of $101,757.70, is clearly an overstatement of its prepetition claim. In its amended claim, Homeside increases its unpaid principal balance from $81,644.14 to $82,787.43, without any explanation or itemization. "The amount of a creditor's 'claim' is typically determined as of the petition date, and includes the principal amount of the obligation plus all matured *pre*petition interest, fees, costs and charges owing as of the petition date." 4 L. KING, COLLIER ON BANKRUPTCY, ¶ 506.04[1] (15th ed. rev.). As the amortized monthly payment on the debt is allocated to principal and interest, the addition of the entire delinquent monthly payment to the unpaid principal overstates the accruing prepetition interest.

* * *

> Homeside should have made two calculations. One calculation would have determined the prepetition claim as of the date of the petition by adding the unpaid principal, all accrued interest to the date of filing the petition, fees, costs, and other incurred charges. The second calculation would then have determined the arrearage amount by adding all unpaid monthly payments, all late charges, fees, costs and any other prepetition charges incurred by Homeside. The creditor should not then add the two calculations together to determine the total amount of the claim as Homeside did. The first calculation is the total amount of the claim and the second calculation is the arrearage that is included in the first calculation. The second calculation is merely so the Debtors are able to pay arrearages through Debtor's Plan to cure any prepetition default as is allowed pursuant to 11 U.S.C. § 1322(b)(5). Consequently, the original and amended proofs of claim filed by Homeside are inaccurate and do not properly show the amount owing by Debtors to Homeside on the petition date.

Given the above observation from *Michnal*, and the requirements of § 71-1-320, the Court is only able to determine the principal and is unable to determine the accrued interest to the date of default. Consequently, the Court will determine the allowed fee based upon the information provided, that being the principal amount of $45,600. One percent of that amount, or $456.00, is allowed to Apex as total reasonable fees by § 71-1-320 when reinstatement is accomplished under MCA § 71-1-312 and § 1322(b)(3) and (e), as is proposed in Debtors' Plans. *Ransom*, 361 B.R. at 902. As in *Ransom*, the $456.00 is significantly less than the total of $4,005.80 in prepetition fees plus $3,837.95 in post-petition fees, a total of $7,843.75, requested by Apex in its Claim and Application. In a case where Apex's secured status was never at issue, the Court finds that Apex's requested pre- and post-petition fees are overstated and unreasonable and they are disallowed except for $456.00.

With respect to costs, the Court in accordance with *Llewellyn* awards Apex the $159.48 in costs requested in its Application since costs are not subject to the limitations of MCA § 71-1-320. The costs included in the Application are supported by itemized entries in the billing

statements from 3/6/08 through 4/24/08. However, no corresponding detail is provided for the prepetition costs requested in the amount of $780.56 in Apex's Claim No. 8-2. That sum is stated without any detail explaining what such costs consist of, or when they were incurred. As such, the Court finds that Apex failed to satisfy its burden of proof to show the validity of its claim for costs of $780.56, and those costs are disallowed.

Based upon the foregoing analysis, Apex's Claim No. 8-2 would included the following amounts:

| | |
|---|---|
| Principal amount of Loan | $45,600.00 |
| Payment arrearage and interest | $ 5,768.89 |
| Late Payment Fees | $    550.00 |
| Attorney Fees | $    456.00 |
| Costs | $    159.48 |
| **Total** | **$52,534.37** |

However, the Court's analysis cannot end with that calculation. The entry for "Payment arrearage and interest" is overstated as the caption suggests that the terms "Payment arrearage and interest" includes late payments which include an allocation to principal and interest. The Court's concern about such entry in the amount of $5,768.89, directly involves the observation it made in *Michnal*: "As the amortized monthly payment on the debt is allocated to principal and interest, the addition of the entire delinquent monthly payment to the unpaid principal overstates the accruing prepetition interest." *Id.* at 412. The Court's concern is further confirmed that the terms "Payment arrearage and interest" includes principal and interest because the arrearage amount stated on the face of Apex's Claim No. 8-2 is $11,105.20. If one adds the following numbers, an arrearage amount of $11,105.25 is calculated:

|  |  |
|---|---|
| Payment arrearage and interest | $5,768.89 |
| Late Payment Fees | $ 550.00 |
| Attorney Fees | $4,005.80 |
| Costs | $ 780.56 |
| **Total** | **$11,105.25** |

A 5 cent difference occurs from the itemization calculation and the amount stated on the face of Apex's Claim. Based on this comparison, the Court concludes that the terms "Payment arrearage and interest" is not solely accrued interest from the date of Debtors' last prepetition payment, which brought interest current, to Debtors' date of bankruptcy filing.

Given the failure of Apex to properly file its claim consistent with the Court's local rules and case law as noted above and the discussed miscalculation of amounts owing, the Court allows, based on the information stated in Apex's filed Claims, the following arrearage amount to be cured through the plan:

|  |  |
|---|---|
| Payment arrearage and interest | $5,768.89 |
| Late Payment Fees | $ 550.00 |
| Attorney Fees | $ 456.00 |
| Costs | $ 159.48 |
| **Total** | **$6,934.37** |

As the Court is unable to determine the accrued interest, from the date of Debtors' last prepetition payment, which brought interest current, to the date of Debtors' bankruptcy filing so an accurate prepetition claim is calculated, the Court directs Apex to file an additional amended claim for the sole purpose of attaching an itemization that correctly inserts and identifies the prepetition accrued interest and the remaining prepetition claim as determined by this memorandum in the following form:

|  |  |
|---|---|
| Principal amount of Loan | $45,600.00 |
| Accrued interest to date of bankruptcy filing | $??????? |
| Late Payment Fees | $   550.00 |
| Attorney Fees | $   456.00 |

|  |  |
|---|---|
| Costs | $ 159.48 |
| **Total** | **$???????** |

Apex's amended Claim shall also include the arrearage calculation of $6,934.37, on the face of its Claim. Provided the filed amended Claim is consistent with this Memorandum and no further objections are filed to the Claim, Debtors shall amend their Chapter 13 Plan, if necessary, so that confirmation can proceed.

Consistent with the foregoing, the Court will enter the following separate Order:

**IT IS ORDERED** Debtors' objection (Docket No. 25) to Proof of Claim No. 8-2 filed by Apex Funding Group, Inc. ("Apex") and Debtor's objection (Docket No. 37) to Apex's Application to approve Fees of Over-Secured Creditor ("Application") (Docket No. 35) both are **SUSTAINED** and Apex is allowed a total of $456.00 in attorney fees and $159.48 in costs; that Apex is allowed a prepetition arrearage amount of $6,934.37, that Apex shall file an amended Claim on or before September 8, 2008, consistent with the memorandum issued simultaneously with this Order; and that if necessary, Debtors shall file an amended Chapter 13 Plan that will be considered for confirmation on September 11, 2008, at 9:00 a.m., or as soon thereafter as counsel can be heard, in the BANKRUPTCY COURTROOM, RUSSELL SMITH COURTHOUSE, 201 EAST BROADWAY, MISSOULA, MONTANA.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana